IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADRIENE DILWORTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 01-128 |
| | ) |
| METROPOLITAN LIFE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION
# and
# ORDER OF COURT

Defendant Metropolitan Life Insurance Company ("MetLife" or "Defendant") has filed a Motion in Limine (Docket No. 50) seeking to exclude at trial evidence regarding the Pennsylvania Report of Market Conduct Examination of MetLife ("Pennsylvania Report"), the Florida Report of Investigation into Sales Practices of MetLife ("Florida Report"), and the Connecticut Market Conduct Report ("Connecticut Report"). Defendant's Motion is granted in part and denied in part as follows.

**A. THE PENNSYLVANIA MARKET CONDUCT EXAMINATION**

MetLife's sales practices during the early 1990s were the focus of an investigation by the Pennsylvania Insurance Department, which issued a Market Conduct Examination Report on February 11, 1994. (Docket No. 50, Ex. A). The report defined the scope of the investigation as follows:

1

> A targeted market conduct examination has been performed on Metropolitan Life Insurance Company, hereinafter referred to as "MetLife", at their Johnstown, Pennsylvania office and through interviews conducted with various consumers, insurance agents and MetLife employees located principally within a six (6) county Western Pennsylvania Region, and a Report thereon is submitted as follows:
>
>> The examination covered the period January 1, 1990 through December 31, 1992, unless otherwise noted. The purpose of the examination was to review MetLife's management, marketing and sales practices and procedures in Western Pennsylvania. Western Pennsylvania was defined as the counties of Armstrong, Allegheny, Beaver, Butler, Westmoreland, and Washington. However, some areas of review were expanded beyond Western Pennsylvania when initial findings indicated the activities appeared to occur throughout Pennsylvania.
>
> In order to obtain a thorough perspective on MetLife's marketing practices, the examination was conducted in three (3) phases:
>
>> (1) MetLife's Johnstown, Pennsylvania office was visited by examiners to review copies of requested applications and consumer complaint files, as well as securing additional data relative to the examination.
>
>> (2) Interviews were conducted with various consumers, agents and MetLife employees in Western Pennsylvania concerning MetLife marketing practices and procedures.
>
>> (3) Interviews were conducted with principal MetLife corporate officials having management or supervisory responsibilities for the insurer's marketing and sales operations.

Pennsylvania Report at 4-5.

The investigation stemmed from complaints made in March 1993 that MetLife

customers had been induced through misrepresentations to replace existing MetLife policies, thereby incurring additional costs and fees. Id. at 8. There also were customer allegations of deceptive marketing of insurance policies as retirement and savings plans. Id. The report details numerous interviews, and includes copies of the marketing materials utilized in several individual cases.

Defendant asserts that this report is "classic hearsay" which should not be admitted at trial. Plaintiff responds that the report may be admitted as an "official record" under Federal Rule of Evidence 803(8)(C). Rule 803(8)(C) provides an exception to the hearsay rule for "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8); see also, e.g., Goodman v. Pa. Turnpike Comm'n, 293 F.3d 655, 669 n.10 (report of Legislative Budget and Finance Committee not inadmissible hearsay).

Defendant argues that Rule 803(8)(C) does not apply because there are several indicia of untrustworthiness in the Pennsylvania Report, including that: (1) MetLife was not given the benefit of a hearing before an impartial trier of fact; (2) there were no evidentiary rules; (3) none of the policyholders referred to in the report were subject to cross-examination; and (4) neither Plaintiff nor the sales representative who sold Plaintiff her policy, Haisela Dorsey, were mentioned in the report.

The Advisory Committee Notes to Rule 803(8) identify four, non-exclusive,

indicia of trustworthiness: (1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held and the level at which conducted; and (4) possible bias. Here, the investigation was initiated and completed in a timely fashion. In addition, the Insurance Commission is certainly qualified to conduct an investigation concerning the marketing strategies used by insurance companies within Pennsylvania. Thus, the first two indicia do not support a finding of untrustworthiness. Defendant, however, argues that the latter two of these four indicia – whether a hearing was held and possible motivational bias – are lacking in this case and compel exclusion of the report. I find neither of these arguments persuasive.

First, although the Pennsylvania Insurance Commission did not hold a hearing, that was due at least in part to MetLife's decision not to challenge the findings contained in the report. Pennsylvania Report, Section XIII. Thus, I do not view the lack of a hearing to be a controlling consideration in this case.

Second, as evidence of motivational bias, Defendant points to the ruling in Sherman v. Maleski, No. 309 M.D. 1994 (Pa. Cmwlth. Aug. 30, 1994), vacated, 664 A.2d 221 (1995), in which the court determined that public comments made by the then-insurance commissioner made it appear that the commissioner had "prejudged" one of the agents involved. That ruling, however, does not indicate that any bias existed with respect to MetLife. Therefore, MetLife has not shown any basis for believing that the report was biased, and I find no basis for excluding the report for this reason.

For all of these reasons, Defendant's Motion is denied to the extent it seeks to exclude the Pennsylvania Report in its entirety on the grounds that the Report is inadmissible hearsay. This ruling, however, does not mean that all of the contents of the Report are necessarily admissible as non-hearsay. To the extent Defendant contends that specific portions of the Report fall outside the scope of Rule 803(8) or otherwise objects to specific portions of the Report (e.g., as hearsay within hearsay, etc.), I will consider such objections at trial.

Defendant also asserts that, even if non-hearsay, evidence regarding the Pennsylvania Report should be excluded at trial on the grounds that it is irrelevant and/or unfairly prejudicial. This portion of Defendant's Motion is granted to the extent the report discusses or makes findings concerning alleged sales practices distinct from or dissimilar to the "vanishing premium" allegations contained in Plaintiff's Complaint. Such evidence would have a tendency to confuse the jury and, therefore, to unfairly prejudice Defendant.

Defendant's Motion is denied, however, to the extent the Pennsylvania Report discusses or makes findings concerning sales practices similar to Plaintiff's "vanishing premium" allegations. Such evidence may be relevant, for example, in establishing a pattern and practice on the part of MetLife, or a corporate culture encouraging similar deceptive sales techniques.[1] This probative value is not substantially

---

[1] In this regard, I note that the Pennsylvania Report is focused on MetLife activity within Pennsylvania, the state where the transactions in this case took place.

5

outweighed by the danger of unfair prejudice to MetLife.[2]

B. **THE FLORIDA REPORT OF INVESTIGATION INTO SALES PRACTICES OF METLIFE**

The portion of Defendant's Motion in Limine seeking to exclude evidence of the Florida Report of Investigation dated March 6, 1994, is granted.

With respect to the Florida Report, MetLife argues that it centered largely on the conduct of Rick Urso, Manager of the District Sales Office for the Southeastern Head Office Branch of MetLife. Urso's scheme to sell insurance policies as "Nurses Retirement Savings Plans" is detailed in the report, and complaints about that program were the genesis for the report. See Docket No. 50, Ex. B, at 1-2. The deceptive marketing is alleged to have occurred nationwide. Id. at 2. There is, however, no indication that the report addresses any conduct in Pennsylvania similar to that which is alleged in this case, i.e., that insurance policies were sold on the promise that premiums would be payable for a limited time, after which the policies would become self-funding. Indeed, the focus of the Florida Report was the marketing of insurance policies as retirement accounts, a situation in which the very nature of the transaction was misrepresented. Moreover, although Urso's territory included Pennsylvania, MetLife represents that the agent who sold the policy in this case, Haisela Dorsey, did not work in Urso's branch and did not sell the policies at issue in the Florida Report as "Nurses Retirement Savings Plan[s]."

I conclude that the Florida Report, which addresses almost exclusively the

---

[2] Of course, Defendants remain free to make Rule 403 objections, if appropriate, to specific portions of the Pennsylvania Report when offered at trial.

"Nurses Retirement Savings Plan" marketed by Urso has some limited relevance, particularly since it concludes that MetLife's supervision of its agents led to improper sales tactics on a national level. However, the specific type of misrepresentation alleged by Plaintiff here does not appear to have been included in the Florida report. Thus, there is potential to confuse the jury.

Because the Florida Report has limited relevance, yet great potential to confuse the jury, I find that the report is inadmissible as it will be unfairly prejudicial to MetLife under Rule 403.

**C. THE CONNECTICUT MARKET CONDUCT REPORT**

Defendant's Motion also seeks to exclude evidence of a "Connecticut Market Conduct Report" which Plaintiff identifies as Exhibit 37 in her pretrial statement. Unlike the Pennsylvania and Florida Reports, however, Defendant did not attach a copy of the Connecticut Report to its Motion. Instead, Defendant indicates that Plaintiff failed to provide it with a bates number or date for the exhibit, and reserves the right to amend the Motion "when and if Plaintiff provides Defendant with the correct bates range." Docket No. 50, at 1 n.2. In addition, Defendant's Motion does not provide any details regarding the scope of the Connecticut Report or its contents.

Plaintiff likewise fails to provide details regarding the Connecticut Report in her response. Indeed, the only substantive reference to the Connecticut Report in Plaintiff's Response Brief is a conclusory sentence in a footnote stating that "The Connecticut Examination which was not addressed in Mohney dealt specifically with

the sale of policies through 'vanishing premiums' and is extremely relevant to the issues in this case." Docket No. 54, at 1 n.1. Plaintiff, however, does not attach a copy of the Connecticut Report or cite to a specific portion of the report to support this assertion.

Without the Connecticut Report before me, and without any specific information regarding its scope or contents, I simply am unable to make a finding as to the Report's admissibility. Thus, Defendant's Motion is denied with respect to the Connecticut Report, without prejudice to its ability to renew the Motion if, and when, the parties supply me with the appropriate documentation.

An appropriate Order follows.

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADRIENE DILWORTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 01-128 |
| | ) |
| METROPOLITAN LIFE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **9th** day of March, 2006, Defendant's Motion in Limine to Exclude Evidence Regarding the Pennsylvania, Florida, and Connecticut Market Conduct Examinations of Metropolitan Life Insurance Company (Docket No. 50) is granted in part and denied in part as set forth more fully in the Opinion accompanying this Order.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge